```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| BARBARA FISHER, | HON. JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 11-01634 (JBS) |
| v. |  |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. |  |

APPEARANCES:

Alan H. Polonsky, Esq.
512 South White Horse Pike
Audubon, NJ 08106
    Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
    By:  David L. Brown
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

This matter comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff Barbara Fisher's application for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act (the "Act").

At issue in this case is whether there is substantial evidence in the record that was fully and fairly developed to support the Administrative Law Judge's ("ALJ") determination that Plaintiff's impairments were not severe enough to qualify her as disabled under the Social Security Act. For the reasons explained below, the Court will remand the case to the Commissioner of Social Security to reconsider Plaintiff's request for Disability Insurance Benefits.

## II. **BACKGROUND**

### A.   **Procedural Background**

Plaintiff, Barbara Fisher, was born December 24, 1961.  Pl's Brief at 4.  Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act on November 2, 2006.  Compl. at 1.  The application was initially denied on December 19, 2007.  R. at 9.  Plaintiff subsequently requested a hearing before an ALJ.  R. at 9.  The hearing was held on August 31, 2009.  R. at 9.  On October 20, 2009, the ALJ issued a final decision, finding that Plaintiff was not disabled under the Social Security Act and was therefore not entitled to disability benefits.  R. at 18-19.  The Appeals Council denied further review on February 11, 2011.  Compl. at 1.  Plaintiff timely filed the instant complaint on March 24, 2011, asking the Court to reverse the final judgment of the Commissioner of Social

Security, or alternatively remand the case to reconsider Plaintiff's request.

### B. Medical Reports

Several medical and psychiatric reports from a number of physicians and psychologists were submitted. Relevant to the present appeal are the reports submitted by Dr. Gary Goldstein, M.D., Dr. Ronald Karpf, Ph.D., and Dr. Richard Filippone, Ph.D., because they were relied upon by the ALJ in reaching his decision.

Dr. Goldstein, an orthopedist, had been treating and evaluating Plaintiff for her physical injuries which resulted from her automobile accidents on December 17, 2005 and March 31, 2007. R. at 529-45; Pl's Brief at 8. Dr. Goldstein had been treating Plaintiff for "musculoskeletal symptomatology." R. at 529. After numerous consultations between May 2007 and November 2007, Dr. Goldstein concluded that Plaintiff was "mechanically capable of working in a variety of situations," and did not "qualify for disability from an orthopedic standpoint." R. at 529. Dr. Goldstein again evaluated Plaintiff on a number of occasions between October 2008 and August 2009. R. at 604-08. He classified her symptomatology as "ongoing and permanent," but relatively "unchanged." R. at 604, 608. Dr. Goldstein's later reports also note Plaintiff's complaints regarding her diffuse pain, headaches, neck pain, lower back pain, and pain radiating

to her arms and left leg.  R. at 604.

Dr. Karpf, a psychologist, evaluated Plaintiff and submitted his report November 19, 2007.  R. at 552-56.  Dr. Karpf reported that Plaintiff has a dysthymic disorder and would occasionally have "a major depressive episode which would make her depression more severe."  R. at 554.  Dr. Karpf also reported that Plaintiff claimed to have "some delusions," but he believed that she "was exaggerating some of her symptoms."  R. at 554-55.  Overall, Dr. Karpf diagnosed Plaintiff as having a dysthymic disorder and generalized anxiety disorder.  R. at 556.

Dr. Filippone, a non-examining State Agency psychologist, provided a report based on Dr. Karpf's evaluations of Plaintiff.  Def's Brief at 11-12; R. at 557-73.  Dr. Filippone's report reiterated everything Dr. Karpf reported.  R. at 557-73.  He also noted that Plaintiff's reported symptoms to Dr. Karpf were inconsistent with her "activities of daily living,"[1] but were still partially credible.  R. at 573.

**C.   ALJ Opinion**

After reviewing the applicable law, the ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010.  R. at 11.  The ALJ

---

[1]   Dr. Filippone noted that Plaintiff socialized, "goes to weekend [sic] church, [birth]day parties, and gets along with everybody. . . . [S]he babysits grandchildren, cooks for herself, pays her own bills, manage[s] money, read[s], [and] plays bingo."  R. at 573.

4

proceeded through the regulatory five-step analysis for determining whether an individual is "disabled" or "not disabled," as defined by the Act.

In step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the time period from her alleged onset date of February 24, 2006, through her date last insured. R. at 11. In step two, the ALJ concluded that Plaintiff had several severe impairments: moderate sized broad-based disc herniation, discectomy, anterior cervical discectomy, dysthymic disorder and generalized anxiety disorder. R. at 11. In step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 13.

In steps four and five, the ALJ found that through the date last insured, Plaintiff was unable to perform her past relevant work, but had "the residual functional capacity to perform sedentary work . . . limited to simple, routine, repetitive work; and moderate limitations in understanding, remembering, and carrying out detailed instructions." R. at 14.

The ALJ explained that his steps four and five analyses were based on "the medical evidence of the record; the claimant's symptom magnification which undermine her credibility; and the opinions of Dr. Goldstein, Dr. Karpf, and Dr. Filippone"; along

5

with Plaintiff's "age, education, and work experience in conjunction with the Medical-Vocational Guidelines." R. at 17-18. The ALJ refers to four Social Security Rulings ("SSRs") as the basis for his reliance on the Medical-Vocational Guidelines. R. at 18.

Based on Plaintiff's determined residual functional capacity, age, education, and work experience, the ALJ found that jobs existed in significant numbers in the national economy that she could perform, ultimately concluding that she was not under a disability, as defined by the Social Security Act, from February 24, 2006 to the date of his decision. R. at 18.

## III. DISCUSSION

### A. Standard of Review

This Court is empowered by 42 U.S.C. § 405(g) to review the Commissioner's decision to deny benefits. See Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). The Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). It means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

To facilitate this Court's review, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). Additionally, the ALJ "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D.Pa. 1987).

**B.   Analysis**

Plaintiff challenges the ALJ's findings with respect to whether they are supported by substantial evidence regarding the ALJ's evaluation of various examiners' opinions and the ALJ's assessment of Plaintiff's credibility.  Furthermore, Plaintiff alleges that the ALJ's finding that she is not disabled is improper under Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). Specifically, Plaintiff challenges the ALJ's finding with regard to step five and the ALJ's conclusion as to the residual functional capacity of the Plaintiff.

i.   Disability Defined

The Social Security Act defines "disability" for purposes of Plaintiff's entitlement to benefits as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

7

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a claimant qualifies as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Substantial gainful activity is defined as "work that - (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Importantly, this definition presupposes a regular, continuing, and sustained ability to perform such work. Kangas v. Bowen, 823 F.2d 775, 778 (3d Cir. 1987).

The Commissioner has promulgated regulations that determine disability by application of a five-step sequential analysis codified in 20 C.F.R. § 404.1520. The Commissioner evaluates each case according to a five-step process until a finding of "disabled" or "not disabled" is obtained. 20 C.F.R. § 404.1520(a). This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f).

This analysis involves a shifting burden of proof. <u>Wallace</u>

v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available for the claimant: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas, 823 F.2d at 777.  See Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

  ii. Reliance on Medical Vocational Guidelines

 Plaintiff claims that "[w]here a claimant suffers from a non-exertional [i.e. mental] impairment, the ALJ may not rely solely on the medical vocational guidelines to find the plaintiff disabled; the Commissioner must rebut the claimant's evidence by using a vocational expert."  Pl's Brief at 20.  Defendant argues that because the ALJ "relied on [SSR] 85-15" and "found that plaintiff was capable of performing unskilled sedentary work, the ALJ was entitled to rely on the medical-vocational guidelines."  Def's Brief at 16-17.

 As mentioned above, at step five of the sequential analysis, the burden of proving that work is available for the claimant shifts to the Commissioner to prove that there is some other kind of substantial gainful employment that the claimant is able to

perform.  Kangas, 823 F.2d at 777.  The ALJ must determine whether Plaintiff, "considering age, education, mental and physical limitations and work experience[,] 'has the capacity to perform specific jobs that exist in the national economy.'" Olsen, 703 F.2d at 753 (quoting Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979)).  Depending on the ALJ's interpretation of the available evidence, the ALJ may either rely on the present record for this finding or collect additional information.  The ALJ must, however, conduct his inquiry using the proper legal standards as enumerated in 20 C.F.R. § 404.1501-1599.

A vocational expert may be used when "the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used."  20 C.F.R. § 404.1566(3)(1995).  Two decisions offer support for the contention that the testimony of a vocational expert should be considered.  Santise v. Schweiker, 676 F.2d 925, 935 (3d Cir. 1982) (holding that the Commissioner "must persuade an ALJ . . . that jobs exist in the national economy that the claimant is able to fill"; the introduction of "a vocational expert as to which, if any, positions can be performed by a person possessing the applicant's particular skills" will suffice.); Singleton v. Schweiker, 551 F. Supp. 715, 723-24 (E.D. Pa. 1982) (noting that in making the "residual functional capacity" determination, the Commissioner may present

11

evidence through the use of a vocational expert).

An ALJ, however, is never required to use a vocational expert, but rather has discretionary power to do so. See C.F.R. § 404.1566(e). At step five, the ALJ need only rely on "competent evidence", not necessarily the opinion of a vocational expert, in determining whether the claimant can perform sedentary work. See Gilliand v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986). Where no significant or substantial non-exertional impairments exist, the Third Circuit has endorsed the use of the Medical-Vocational Guidelines ("grids") in step five of the sequential process rather than vocational experts. Santise, 676 F.2d at 934-35.

If the grids call for a finding of disability, the ALJ is bound by them, and may not rely on the testimony of a vocational expert to find otherwise. Cooper v. Sullivan, 880 F.2d 1152, 1156-57 (9th Cir. 1989). The grids, however, are to be used only for purely exertional impairments. Green v. Schweiker, 749 F.2d 1066, 1072 (3d Cir. 1984). If the claimant has non-exertional impairments, the Commissioner must rebut the claimant's evidence by using a vocational expert or other evidence. Gilliland , 786 F.2d at 183-84. With a combination of exertional and non-exertional impairments, even using grids as a "framework" does not eliminate the requirement of a finding of specific jobs a claimant can perform. Welch v. Bowen, 854 F.2d 436 (11th Cir.

1988).  The ALJ cannot "determine[] that the claimant's nonexertional impairments did not significantly erode her occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing this or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)."  Diaz v. Comm'r of Soc. Sec., Civ. No. 10-392, 2010 WL 5288206, at *1 (D.N.J. Dec. 15, 2010) (citing Sykes, 228 F.3d at 261).

Plaintiff argues that the ALJ did not comply with Sykes in reaching his finding that she is "not disabled."  Here, at step two of the sequential analysis, the ALJ determined that Plaintiff has severe mental impairments--"dysthymic disorder and generalized anxiety disorder."  R. at 11.  At step three of the sequential analysis, the ALJ determined that Plaintiff's mental impairment did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 13.  Next, at step four, the ALJ found that Plaintiff was "not capable of performing her past relevant work."  R. at 17.  Lastly, at step five, the ALJ held that Plaintiff's "additional non-exertional limitations do not significantly erode the sedentary occupational base; and therefore, a finding of 'not disabled' is appropriate under" Medical-Vocational Rule 201.21.  R. at 18.

In concluding as such, the ALJ referenced four Social

Security Rulings ("SSRs"). "SSRs are agency rulings published under the authority of the Commissioner of Social Security, and they can be relied on as precedents in other applicable cases." Fullaway v. Astrue, Civ. No. 06-5771, 2008 WL 877968, at *5 (D.N.J. Mar. 28, 2008) (citing 20 C.F.R. § 402.35(b)(1); Heckler v. Edwards, 465 U.S. 870, 873 n.3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984)). Again, if non-exertional limitations are present, "the ALJ cannot rely solely on the grids and is required to determine if the non-exertional impairments significantly erode the claimant's occupational base." Fullaway, 2008 WL 877968, at *5 (citing Sykes, 228 F.3d at 269). As the Commissioner correctly notes, though, in making such a determination, an ALJ is permitted to rely on an SSR or other rulemaking by the Social Security Commission as a substitute for a vocational expert. See Allen v. Barnhart, 417 F.3d 396, 406 (3d Cir. 2005); Fullaway, 2008 WL 877968, at *5.

However, "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allen, 417 F.3d at 407. Moreover, "if the ALJ plans to rely on an SSR rather than make an individualized determination based on the testimony of a vocational expert, the ALJ ought to give the claimant notice of

14

this." Fullaway, 2008 WL 877968, at *7 (citing Allen, 417 F.3d at 407).

Here, the ALJ found that, "using the [grids] as a framework . . . the claimant is 'not disabled.'" R. at 18. Furthermore, citing four SSRs--SSR 83-11, SSR 83-12, SSR 83-14, and SSR 85-15 --the ALJ held that "the additional non-exertional limitations do not significantly erode the sedentary occupational base; and, therefore, a finding of 'not disabled' is appropriate under the framework of" the grids. R. at 18.

The Third Circuit in Meyler v. Commissioner of Social Security, 238 Fed. Appx. 884 (3d Cir. 2007), dealt with a similar situation where the "ALJ relied upon SSR 85-15 and SSR 83-10 without calling a vocational expert, and without providing advanced notice to Meyler so she could call her own vocational expert." Meyler, 238 Fed. Appx. at 890. The Meyler court "vacate[d] and remand[ed] for further explanation by the ALJ [as to] how Meyler's specific limitations affect[ed] her ability to perform unskilled work in a job that constitutes substantial gainful employment." Id. at 890-91. The court noted that the ALJ did "not explain how Meyler's particular mental impairments relate[d] to the categories or examples in SSR 85-15." Id. at 890. Nor did the ALJ explain why, under the cited SSRs, Meyler's non-exertional impairments "did not prevent her from meeting the mental demands of unskilled work." Id. Thus, the Meyler court

15

held that the "ALJ's decision [was] not supported by substantial evidence." Id.

Similar to Meyler, the ALJ here relied on SSRs without expressly explaining how Plaintiff's "mental impairments relate to the categories or examples in" the cited SSRs. Id.; R. at 18. The ALJ relied upon SSRs without (1) calling a vocational expert, (2) providing advanced notice to Plaintiff so she could call her own vocational expert, or (3) explaining how Plaintiff's specific limitations relate to the SSRs relied upon. Thus, this Court finds that the ALJ's conclusion that Plaintiff's non-exertional limitations did not significantly erode her occupational base is not supported by substantial evidence.

Therefore, this Court will vacate and remand this matter to allow the ALJ to develop the record and provide further explanation of how Plaintiff's specific limitations affect her ability to perform unskilled work in a job that constitutes substantial gainful employment.[2]

## IV.  **CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ erred at the fifth step of the five-step sequential analysis.

---

[2] As the Court has decided to remand this case for further findings as to the Plaintiff's ability to perform work, it is unnecessary for the Court to reach the issue of whether the ALJ's decision finding the Plaintiff not credible was consistent with SSR 96-7.

Accordingly, the decision of the ALJ is vacated and remanded for reconsideration consistent with this opinion. An appropriate order follows.

**March 21, 2012**            **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                              Chief United States District Judge